IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHERRY L. MARTINEZ,

        Plaintiff,

vs.                                             No.  CV 03-974  JP/ACT

CITY OF RATON and RATON POLICE
DEPARTMENT and ROGER GRAHAM,
LEONARD BACA, and VINCE MARES,
individually and in their official capacities
as employees of the City of Raton,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On October 25, 2004 Defendants filed a Motion for Summary Judgment (Doc. No. 22).
The Court has carefully considered the pleadings, the exhibits of record, the relevant case law,
and the arguments of counsel.  The Court will grant the motion.

Plaintiff's Complaint contains claims under 42 U.S.C. § 1983 for violations of her Fourth
and Fourteenth Amendment right to be free from unreasonable search and seizure.  The Fourth
Amendment claims include a claim for unlawful arrest, and a claim of excessive force.  The
Complaint also contains a § 1983 claim for violation of Plaintiff's First Amendment right to access
to the courts, and a state law claim under New Mexico common law for the tort of battery.
Defendants are the City of Raton, a New Mexico municipality, Vince Mares, the Chief of Police
of the Raton Police Department, and City of Raton police officers Roger Graham and Leonard
Baca.  Defendants move for summary judgment on all claims.

**Background.**

Most of the facts are undisputed; those that are in dispute are viewed in a light most favorable to Plaintiff.  The incident that gave rise to this lawsuit occurred on November 11, 2002 in Raton, New Mexico.  On that day at about 5:00 p.m. Plaintiff Sherry L. Martinez was delivering pizzas for her employer when she saw her 14-year-old daughter, Kerri Martinez, in a restaurant parking lot.  Plaintiff pulled into the parking lot to talk with her daughter about a babysitting arrangement.  Kerri was with her boyfriend, Jeremiah Cummings, age 18.  An argument ensued, and , Jeremiah pushed Plaintiff to the ground.  After that, Jeremiah and Kerri got into Jeremiah's pickup truck and pulled out of the parking lot.  Plaintiff got into her vehicle to return to work; she pulled into traffic directly behind Jeremiah's vehicle, going in the same direction.  Jeremiah intentionally braked suddenly, over 51 feet short of the stop sign, causing Plaintiff's vehicle to rear-end Jeremiah's vehicle.  Plaintiff phoned the police department for help from a nearby pay phone, got back into her car, and waited for the police to arrive.  Plaintiff was very upset with Jeremiah about the accident, and she was worried about her daughter going with Jeremiah after what he had done to Plaintiff.

Defendants Leonard Baca and Roger Graham, police officers with the City of Raton, arrived on the scene to investigate the accident.  One of the officers began writing Plaintiff a traffic citation for following too closely.  As this was happening, Plaintiff became concerned that her daughter was about to leave with Jeremiah, and she told the officers, "That is my 14-year-old daughter.  Stop her now."  Def. Ex. C, Pl. Depo. at 42.  The officers ignored Plaintiff's request.  Plaintiff began to exit her vehicle, and Officer Graham told her that if she did, she would be arrested.  Plaintiff disobeyed the officer's order and exited her vehicle.  Upon exiting her vehicle,

Plaintiff ran toward the pickup truck, yelling and waving her arms at her daughter and Jeremiah, telling them to come back and not to leave. The officers attempted to stop Plaintiff, she resisted them, and they placed her under arrest. While physically restraining and arresting Plaintiff, the officers allowed Plaintiff's daughter Kerri to drive off with Jeremiah against her mother's wishes.

Plaintiff is a small woman weighing 87 pounds. In making the arrest, the officers grabbed Plaintiff's arms and jacket, placed her against the police car, and handcuffed her. In doing so Officer Graham forcefully grabbed the back of Plaintiff's neck with one hand and her arm with his other hand, lifted her body off the ground, and pushed her head against the roof of the car. While she was in the police car being transported to the Colfax County Detention Center, Plaintiff slipped out of her handcuffs four times. Plaintiff sustained scratches on her wrists, red marks on her hands, and four "fingerprint bruises" on her left upper arm. Id. at 50.

In addition to the traffic citation, the officers charged Plaintiff with resisting, evading, and obstructing an officer, disorderly conduct, and battery on a peace officer. On May 20, 2004, Plaintiff was convicted of the charge of battery on a peace officer and received a deferred sentence.

Defendant Police Chief Vince Mares did not participate in the arrest of Plaintiff. Some time later, Plaintiff took her daughter Kerri to the police department so Kerri could tell Chief Mares what actually happened in the incident of November 11. Kerri told Chief Mares that Jeremiah Cummings had intentionally slammed on the brakes in his pickup truck in order to cause Plaintiff to crash into the back of his vehicle. When he was told this, Chief Mares acted in a hostile fashion and accused Kerri of filing a false police report. This upset Kerri and made her cry, whereupon Plaintiff and Kerri left the police department. Subsequently, Plaintiff made a

written complaint about Chief Mares' treatment of her daughter that she hand-delivered to Chief Mares, but she had no discussion with Chief Mares about her written complaint.

On June 5, 2003, Plaintiff filed a *pro se* complaint in New Mexico state court. Defendants removed the complaint to federal court. Plaintiff is now represented by counsel.

As to the wrongful arrest claim, Defendants contend that officers Graham and Baca had probable cause to detain Plaintiff for questioning following the collision, and to arrest Plaintiff after she disobeyed their orders, left her vehicle, and began resisting their efforts to restrain her. They further contend their actions in restraining Plaintiff do not rise to the level of a Fourth Amendment constitutional violation for excessive force. Alternatively, Defendants assert the actions of officers Graham and Baca were objectively reasonable under the circumstances, entitling them to qualified immunity on the Fourth Amendment claims. Defendants also contend that Plaintiff's battery claim fails because the officers were authorized under the law to apprehend and arrest Plaintiff. As to the First Amendment claim, in which Plaintiff claims that Police Chief Vince Mares violated her First Amendment right to access to the courts, Defendants contend that Plaintiff lacks standing to complain about Mares' alleged treatment of her daughter, and that the claim fails on its merits because there was no deterrer or chilling effect on Plaintiff's speech.

**Summary Judgment Standards.**

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" where the evidence is such that a reasonable factfinder could return a

4

verdict for the nonmoving party.  Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994),

*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

When applying this standard, the Court examines the factual record and reasonable

inferences therefrom in the light most favorable to the party opposing summary judgment.

Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

The moving party bears the initial burden of showing the absence of a genuine issue of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Simms v. Oklahoma ex rel. Dep't of

Mental Health & Substance Abuse Serv., 165 F.3d 1321, 1326 (10th Cir. 1999).  Only then does

the burden shift to the non-movant to come forward with evidence showing that there is a genuine

issue of material fact.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.

1991).  The non-moving party may not avoid summary judgment by resting upon the mere

allegations or denials of the party's pleadings. Bacchus, 939 F.2d at 891.  To withstand a motion

for summary judgment, the non-movant must make specific reference to admissible evidence in

the record.  *See* Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995).

**Discussion.**

The Fourth Amendment to the United States Constitution safeguards people's right "to be

secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures. . .."

*Unlawful arrest claim.*  An arrest must be based on probable cause, Gerstein v. Pugh, 420

U.S. 103, 111 (1975).  Defendants contend that any claim that Plaintiff's arrest violated her

Fourth Amendment rights must fail because the officers had probable cause to arrest her.

 The officers undoubtedly were justified in briefly detaining Plaintiff to investigate the

5

collision.  Plaintiff herself had called them to the scene for this purpose.  The officers were entitled

to maintain the status quo during their investigation.  *See* Adams v. Williams, 407 U.S. 143, 146

(1972) (officer may briefly detain individual "in order to determine his identity or to maintain the

status quo momentarily while obtaining more information"); *see also* Gallegos v. City of Colorado

Springs, 114 F.3d 1024, 1029 (10th Cir. 1997); United States v. Perdue, 8 F.3d 1455, 1462 (10th

Cir. 1993) (police officers are authorized to maintain status quo during investigative stop).

Additionally, the officers had the legal duty to investigate ongoing criminal violations as well as a

continuing duty to preserve the peace.  *See* Romero v. Sanchez, 119 N.M. 690, 693, 895 P.2d

212, 215 (1995) (citing NMSA 1978 §§ 29-1-1, 29-1-18(A)).  Plaintiff insisted on exiting her

vehicle against a lawful order by the officers and approached the other vehicle in a manner that to

a reasonable person seemed menacing and had the potential to result in a physical altercation

between Plaintiff and Jeremiah Cummings.  Given these circumstances, the officers justifiably

restrained her.  Plaintiff resisted the officers and was later convicted of battery on a police officer

in connection with this incident.  A conviction represents a defense to a § 1983 action asserting an

arrest was made without probable cause.  Howard v. Dickerson, 34 F.3d 978, 981 n.2 (10th Cir.

1994).

    Plaintiff does not deny that there was probable cause for her arrest.  She asserts only that

the officers intentionally and negligently created a situation whereby Plaintiff had no choice but to

disobey their commands.  She contends that the officers refused to honor Plaintiff's request to

stop Jeremiah Cummings from taking her minor daughter away with him in his pickup truck,

despite knowing that Plaintiff did not want her daughter to do so.  To the extent that Plaintiff

claims her arrest resulted from the officers' exercising bad judgment, she cannot establish a Fourth

Amendment violation.  *See* <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 346-47 (2001) (no

Fourth Amendment violation where plaintiff admitted to misdemeanor seat belt violation even

though arresting officer exercised "extremely poor judgment" and arrestee subjected to "pointless

indignity").

Defendants have demonstrated that there are no disputed material facts and that they are

entitled to judgment as a matter of law on Plaintiff's unlawful arrest claim, and summary judgment

is appropriate for all Defendants on this claim.

*Excessive force claim.*[1]  Claims of excessive force are analyzed under the objective

reasonableness standard of the Fourth Amendment.  <u>Graham v. Connor</u>, 490 U.S. 386, 396-97

(1989); <u>Jiron v. City of Lakewood</u>, 392 F.3d 410, ___, slip op. at 8 (10th Cir. Dec. 20, 2004).  In

evaluating an excessive force claim, the court must consider the totality of the circumstances.

<u>Sevier v. City of Lawrence</u>, 60 F.3d 695, 699 (10th Cir. 1995).  The reasonableness of a

particular use of force "must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396.  Allowance must be

made "for the fact that police officers are often forced to make split-second judgments -- in

circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is

necessary in a particular situation." <u>Graham</u>, 490 U.S. at 397.  Moreover, the inquiry is objective,

"without regard to [the officers'] underlying intent or motivation." <u>Id.</u>  The right to make an

arrest necessarily carries with it the right to use some degree of physical force to effect it.  <u>Id.</u> at

396.  Even before the right to make an arrest arises, a law enforcement officer has a right to take

reasonable steps to protect himself and others during an investigatory stop.  *See* <u>United States v.</u>

---

[1]  Defendant Officer Leonard Baca is not accused of using excessive force in the arrest of Plaintiff.

Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993).  Among the factors to consider are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396.  Reasonableness of the use of force depends, in part, on whether the officers' own "reckless or deliberate conduct during the seizure unreasonably created the need to use such force."  Sevier, 60 F.3d at 699.

Here, the undisputed facts establish that the police officers were presented with an objectively volatile situation.  Even though they were only investigating a minor traffic accident, from an objective viewpoint, the officers had the right to keep the parties separated during their investigation in order to secure the situation.  Plaintiff's insistence on disobeying the order to stay in her car, and her approaching the other vehicle in a menacing way, waving her arms and yelling, objectively would have seemed to a reasonable officer that Plaintiff posed an immediate threat to the safety of the driver of the other vehicle, despite Plaintiff's small size.  When the officers attempted to physically restrain Plaintiff, she actively resisted arrest and tried to evade being restrained.  Thus, the officers were justified in using a reasonable amount of force to restrain Plaintiff during the incident.

Plaintiff contends that a jury could believe the officers acted unreasonably when they forcefully restrained her because Jeremiah Cummings had a bad temper and he had previously hit her daughter.  She argues that she acted appropriately by doing everything in her power to prevent her minor daughter from leaving with the adult male who had previously physically abused the daughter.  There is no evidence that the officers were informed or knew of Jeremiah's alleged previous abuse.  Even if they had such knowledge, however, considering the totality of the

8

undisputed circumstances, the officers had the right to forbid and forcefully restrain Plaintiff from exiting her vehicle and approaching the other vehicle.  In doing so, the officers did not use force that exceeded what was objectively reasonable under the circumstances.

A plaintiff must establish that the degree of force actually used was "sufficiently egregious to be of constitutional dimensions." Martin v. Bd. of County Comm'rs, 909 F.2d 402, 407 (10th Cir. 1990) (citing Wise v. Bravo, 666 F.2d 1328, 1335 (10th Cir.1981)).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," will violate the Fourth Amendment.  Graham, 490 U.S. at 396.  The "extent of the injury inflicted" is a relevant factor.  Martin, 909 F.2d at 407; Wise at 1333.

In this case, Plaintiff's alleged injuries were not severe and are entirely consistent with the use of a reasonable amount of force necessary to restrain Plaintiff during the incident.  The scratches and redness on Plaintiff's wrists and hands were undeniably caused by her being grabbed on the wrists to be handcuffed, and by her slipping out of the handcuffs four times on the way to the police station.  The "fingerprint bruises" on Plaintiff's upper arm were undoubtedly caused by an officer's grabbing her arm forcefully to keep her from escaping his grip.  The allegation that Officer Graham forcefully grabbed the back of Plaintiff's neck  and lifted her body off the ground, and pushed her head against the roof of the car does not establish force that was sufficiently egregious to be of constitutional dimensions.

The officers' use of force was objectively reasonable under the circumstances.  Defendants have demonstrated that there are no disputed material facts and that they are entitled to judgment as a matter of law on Plaintiff's excessive force claim, and summary judgment is appropriate for all Defendants on this claim.

9

*The First Amendment claim against Defendant Mares.*  In her First Amendment claim, Plaintiff contends that Defendant Mares intimidated her daughter Kerri, keeping Kerri from making a police report about the November 11, 2002 incident that would have kept Plaintiff from receiving a traffic citation and from being convicted on the battery charge. "By threatening Kerri Martinez with the crime of filing a false police report, Chief Mares stifled free speech, and suppressed Sherry and Kerri Martinez' legal rights."  Pl. Resp. at 13.  This action "guaranteed that Sherry Martinez would be the one convicted of a crime rather than the real criminals, Jeremiah Cummings and the arresting police officers."  Id.

Defendants assert that Plaintiff lacks standing to complain about Chief Mares' alleged deterring of her daughter's speech.  To satisfy the standing requirement, a plaintiff must show an actual or threatened injury to her personally as a result of the defendant's conduct.  Riggs v. City of Albuquerque, 916 F.2d 582, 584 (10th Cir. 1990).  Additionally, the plaintiff must show that the injury "is likely to be redressed by a favorable decision."  Id.  In Riggs, the plaintiffs alleged they had been targets of unconstitutional police surveillance, and that police files were kept on them.  Id. at 584.  The plaintiffs alleged that the surveillance and maintenance of files caused a chilling effect on their First Amendment rights, as they were all outspoken political activists and advocates.  Id.  The court found plaintiffs had standing to challenge the police conduct.

Here, Plaintiff's contentions do not show a direct injury to her that was caused by Defendant Mares' alleged conduct.  Plaintiff's citation was for following too closely, and her conviction was for battery on a peace officer.  Plaintiff has failed to show that these "injuries" would not have occurred if her daughter had been allowed to file a police report backing up Plaintiff's story.  Thus Plaintiff lacks standing to complain about Defendant Mares' alleged

10

conduct .

The First Amendment claim fails on its merits as well.  Plaintiff has not shown an objective deterrent or chilling effect on her own or her daughter's speech.  *See* Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004) (harm must be of type to chill person of ordinary firmness from continuing to engage in protected speech).  Thus, Defendants are entitled to summary judgment on the First Amendment Claim.

*The state law battery claim.*  Plaintiff alleges that Defendant Graham's use of excessive force constitutes the tort of battery.  Compl. ¶ 31.  The New Mexico Tort Claims Act waives governmental immunity for the commission of enumerated common-law torts, one of which is battery, "when caused by law enforcement officers".  NMSA 1978 § 41-4-12.  Unlawfulness is a required element of the tort of battery.  New Mexico law defines the criminal offense of battery as the "unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."  NMSA 1978 § 30-3-4.

Defendants maintain that the actions of the officers were at all times lawful with respect to their touching of Plaintiff during the incident, thus negating a required element of the tort of battery.  Plaintiff argues that a reasonable jury could conclude that the officers acted unlawfully because they violated the state's delinquency statute during the incident.  Plaintiff's theory is that under New Mexico law, Jeremiah Cummings committed the crime of contributing to the delinquency of a minor in violation of NMSA 1978 § 30-6-3[2] by causing or encouraging Kerri Martinez to refuse to obey her mother's reasonable and lawful command not to leave to spend the

---

[2]  Section 30-6-3 makes it a fourth degree felony to contribute to the delinquency of a minor, which "consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years."

night with him.  Plaintiff further asserts that the officers aided and abetted Jeremiah Cummings in the commission of that crime by restraining Plaintiff from exerting parental control over her minor daughter.

Under no view of the facts can it be said that the officers acted unlawfully in this way. There is no evidence, or reasonable inference, that Jeremiah committed the crime of contributing to the delinquency of a minor.  The purpose of this statute is "to protect children from harmful adult conduct."  State v. Barr, 127 N.M. 504, 509, 984 P.2d 185, 190 (Ct. App. 1999).  There is no evidence that Kerri's leaving with Jeremiah resulted in any harm to her.  Plaintiff cites no authority for the proposition that merely failing to stop a minor girl from leaving with an adult male against her mother's wishes constitutes a crime.  Therefore, the officers' conduct cannot be said to have been unlawful simply because they did not prevent Kerri from leaving with Jeremiah, even though Plaintiff expressed her desire to stop that from happening.

Defendants have established that the arresting officers acted lawfully in touching and applying force to Plaintiff during the incident.  Plaintiff has failed to make a showing of a dispute of material fact on the unlawfulness issue.  Defendants are entitled to summary judgment as a matter of law on the battery claim.

THEREFORE it is ordered that Defendants' Motion for Summary Judgment (Doc. No. 22) is GRANTED.  A separate Summary Judgment will be filed contemporaneously with this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE